IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN TOLAND,              )
o/b/o DELMAR TOLAND,        )
                            )
        Plaintiff,           )
                            )
    v.                       )    Civil Action No. 12-43
                            )
MICHAEL J. ASTRUE,          )    Magistrate Judge Cynthia Reed Eddy
COMMISSIONER OF SOCIAL      )
SECURITY,                   )
                            )
        Defendant.           )

# REPORT AND RECOMMENDATION

I.  **Introduction**

Plaintiff Steven Toland ("Plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits filed by his late father, Delmar Toland ("Toland"), under Titles II and XVI of the Social Security Act ("Act") 42 U.S.C. §§401-433, 1381-1383f.  The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 13 & 15].  For the reasons that follow, it is respectfully recommended that the motion for summary judgment filed by the Commissioner [ECF No. 15] be denied, and the motion for summary judgment filed by the Plaintiff [ECF No. 13] be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings.  It is further recommended that the decision of the

Commissioner be vacated, and the case be remanded to him for further consideration of the Plaintiff's claims.

II.     **Procedural History**

Toland protectively applied for DIB and SSI benefits on October 29, 2007, alleging that he had become "disabled" on July 17, 2005. R. at 142.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on February 8, 2008. R. at 65, 70.  Toland apparently took no further action with respect to those applications. R. at 8, 190.

On July 7, 2008, Toland protectively filed new applications for DIB and SSI benefits. R. at 8, 114, 119.  He mistakenly listed July 17, 2007, as his alleged onset date. R. at 114, 119.  The mistake was later corrected, and the applications were treated as claims alleging the existence of a statutory disability beginning on July 17, 2005. R. at 8, 10, 19, 27-28, 128.  The Bureau denied the applications on January 9, 2009. R. at 75, 79.  Toland responded on January 22, 2009, by filing a timely request for an administrative hearing. R. at 84-85.  On June 10, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") David Kozma. R. at 25.  Toland, who was represented by counsel, appeared and testified at the hearing. R. at 28-40.  Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing. R. at 38-41.  In a decision dated July 20, 2010, the ALJ determined that Toland was not "disabled" within the meaning of the Act. R. at 5-20.

On September 10, 2010, Toland sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 4.  The Appeals Council denied the request for review on November 25, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1.  Toland commenced this action on January 12, 2012, seeking judicial review of the Commissioner's decision. [ECF Nos. 1 & 4].  He died on

March 20, 2012. [ECF No. 8-2]. On May 25, 2012, the Plaintiff filed a motion for substitution pursuant to Federal Rule of Civil Procedure 25(a). [ECF No. 8]. The Commissioner did not oppose the motion. [ECF No. 11]. The motion was granted on June 12, 2012. [ECF No. 12]. The Plaintiff and the Commissioner filed motions for summary judgment on July 6, 2012, and August 6, 2012, respectively. [ECF Nos. 13 & 15]. These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. §405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the

4

> claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the

5

>domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

At the hearing, Toland's counsel offered to amend the alleged onset date to February 6, 2008. R. at 36-37. Although the specified date was off by two days, the offered amendment was apparently designed to moot any question as to whether the Bureau's decision denying Toland's previous applications should be reopened. R. at 36-37, 65, 70. Continuing to treat July 17, 2005, as Toland's alleged onset date, the ALJ viewed the offer to amend as an implicit concession that Toland had not been "disabled" between that date and February 8, 2008. R. at 8.

In his decision, the ALJ determined that Toland had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 10. Toland was found to be suffering from degenerative disc disease, facet arthrosis of the lumbar spine, status post cerebrovascular accident, hypertension, dysthymic disorder, and panic disorder without agoraphobia. R. at 10. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 10; 20 C.F.R. §§404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Toland's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 10-12.

In accordance with 20 C.F.R. §§404.1545 and 416.945, the ALJ assessed Toland's "residual functional capacity"[1] as follows: "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work that allows a sit-stand option at his discretion, limited to simple tasks of unskilled work with no public contact." R. at 12. Toland had "past relevant work"[2] experience as a maintenance worker and mechanic. R. at 18. Edelmann classified those positions as "semi-skilled"[3] and "skilled"[4] jobs at the "heavy"[5] level of exertion. R. at 39-40. Since Toland was deemed to be capable of engaging in only "unskilled"[6] and "light"[7] work activities, it was determined that he could not return to his past relevant work. R. at 18.

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999) (parentheses omitted) (citing 20 C.F.R. §404.1545(a)). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§404.1571-404.1576, 416.971-416.976.

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§404.1568(b), 416.968(b).

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§404.1568(c), 416.968(c).

[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§404.1567(d), 416.967(d).

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§404.1568(a), 416.968(a).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

7

Toland was born on May 28, 1964, making him forty-one years old on his alleged onset date and forty-six years old on the date of the ALJ's decision. R. at 18, 114, 119. He was classified as a "younger person" under the Commissioner's regulations.[8] 20 C.F.R. §§404.1563(c), 416.963(c). He had a "limited education"[9] and an ability to communicate in English. R. at 18, 40, 147, 153, 171, 177; 20 C.F.R. §§404.1564(b)(3), (5), 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Toland could work as an assembler, a hand packer, or a sorter/grader. R. at 19. Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).[10] R. at 41.

## V. Discussion

In October 1990, Toland fell at work and injured his neck. R. at 210. The injury caused him to suffer significant pain in his neck and right upper extremity. R. at 210. Conservative treatment failed to relieve his symptoms. R. at 215. Toland underwent an anterior cervical discectomy and fusion on January 22, 1991. R. at 217-218. In the immediate aftermath of the surgery, Toland was instructed "not to perform excessive activity or exercise." R. at 210.

Toland went to Washington Hospital in Washington, Pennsylvania, on July 19, 2005, complaining of "weakness and numbness" on the left side of his face. R. at 237. Upon his arrival, it was noted that he had "left facial droop" and "slurred speech." R. at 341. Objective

---

controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b), 416.967(b).

[8] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§404.1563(c), 416.963(c).

[9] Toland testified that he had dropped out of school before completing the ninth grade. R. at 40.

[10] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

testing revealed that Toland had suffered a cerebrovascular accident. R. at 238, 323. He was discharged on July 22, 2005. R. at 235. Home-care evaluations and speech therapy were arranged to assist his recovery. R. at 236.

Dr. Sandy Vujnovic performed a consultative psychological evaluation of Toland on January 19, 2008, in connection with his previous applications for DIB and SSI benefits. R. at 368-373. Based on the findings of her evaluation, Dr. Vujnovic reported that Toland had "moderate" limitations in his abilities to understand and remember detailed instructions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. R. at 372. She indicated that Toland had "slight" limitations in his abilities to understand and remember short, simple instructions and carry out detailed instructions. R. at 372. No other mental limitations were uncovered during the evaluation. R. at 372-373. A consultative neurological examination of Toland performed by Dr. Charles P. Gennaula on January 22, 2008, detected "no specific limitations." R. at 374.

Dr. Phyllis Brentzel, a non-examining psychological consultant, opined on January 28, 2008, that Toland was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." R. at 377. Dr. Dilip S. Kar, a non-examining medical consultant, indicated on January 31, 2008, that Toland was physically capable of engaging in an unlimited range of "medium"[11] work activities. R. at 393-398. These assessments led the Bureau to deny Toland's earlier applications for DIB and SSI benefits. R. at 65, 70.

During the summer of 2008, Toland began to experience pain in his left lower extremity. R. at 428. Dr. Richard Prostko, a neurosurgeon affiliated with Allegheny General Hospital in

---

[11] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§404.1567(c), 416.967(c).

Pittsburgh, Pennsylvania, concluded that Toland was suffering from radiculopathy and a disc herniation. R. at 428. After reviewing his treatment options, Toland decided to proceed with surgical intervention. R. at 428. On September 11, 2008, Dr. Prostko performed a laminectomy and microdiscectomy on Toland's back. R. at 413-414, 426-427. Edward Powell ("Powell"), a physician's assistant, reported on October 16, 2008, that the surgery had resolved the pain in Toland's left lower extremity. R. at 425. By that time, Toland had already "resumed the majority of his normal day-to-day activities." R. at 425. Powell informed Dr. Dennis Davis, a treating physician, that Toland's "lifting restrictions" were being "liberalized." R. at 425.

On November 18, 2008, Toland complained of "pain on the right side with some radiation through the right buttock and posterior thigh." R. at 424. A magnetic resonance imaging ("MRI") scan of Toland's lumbar spine was conducted on November 20, 2008. R. at 422-423, 459. The MRI scan did not show "[a] recurrent or residual disc herniation." R. at 423, 459.

Kerry Brace ("Brace"), a non-examining psychological consultant, reported on January 5, 2009, that Toland's mental impairments were not "severe." R. at 442. Dr. Mary Ellen Wyszomierski, a non-examining medical consultant, indicated on January 7, 2009, that Toland was physically capable of engaging in a range of "light" work activities involving only occasional postural maneuvers, no moderate exposure to vibration, and no concentrated exposure to wetness or workplace hazards. R. at 444-450. Dr. Wyszomierski predicted that Toland's back impairment would improve before the completion of the Act's twelve-month durational period. R. at 450.

On May 18, 2010, Dr. Davis completed a statement detailing the alleged effects of Toland's cerebrovascular accident. R. at 461-462. He indicated that Toland could stand for only

10

fifteen minutes at a time and sit for only two hours at a time. R. at 461. Dr. Davis opined that Toland could work for only one hour during the course of a typical workday, and that he could never lift objects weighing more than five pounds. R. at 461. Toland was deemed to be limited to only occasional manipulation with his hands. R. at 461. Dr. Davis also reported that Toland could raise his left arm above his shoulder only on an occasional basis. R. at 461. No significant psychiatric limitations were noted. R. at 462.

The lifting limitations identified by Dr. Davis were not consistent with those of an individual who could perform "light" or "sedentary"[12] work. The ALJ accommodated the sitting and standing limitations found by Dr. Davis by limiting Toland to jobs permitting him to sit or stand at his option. R. at 12. The limitations pertaining to Toland's upper extremities were not specifically addressed by the ALJ. R. at 12-18.

The Plaintiff raises two arguments in support of his motion for summary judgment. First, he argues that the ALJ failed to properly weigh the opinion provided by Dr. Davis. [ECF No. 14 at 4-7]. Second, he contends that the ALJ's hypothetical question to Edelmann failed to properly account for all of Toland's functional limitations. *Id.* at 7-11. These issues will be addressed in sequential order.

When the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [a claimant's] case record," the Commissioner will accord it "controlling weight." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). After considering the evidence contained in Toland's case record, the ALJ concluded that the assessment provided by Dr. Davis was "not controlling

---

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§404.1567(a), 416.967(a).

11

on the issue of disability." R. at 15. The ALJ went on to adopt Dr. Wyszomierski's opinion, which was consistent with a finding that Toland could perform "light" work. R. at 15, 444-450.

"A decision not to give a treating physician's opinion controlling weight must not automatically become a decision to give a treating physician's opinion no weight whatsoever." *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008). Even when an administrative law judge "decides not to give a treating physician's opinion controlling weight," he or she "must still carefully evaluate how much weight to give the treating physician's opinion." *Id.* In this vein, the Plaintiff maintains that the ALJ should have accorded more weight to Dr. Davis' assessment, even if that assessment was not entitled to "controlling weight" under the Commissioner's regulations. [ECF No. 14 at 4-7].

The opinion of a treating physician does not inevitably bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Assessments provided by examining and non-examining consultants are also entitled to consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992) (remarking that "the finder of fact may not disregard medical evidence simply because it comes from a particular source"). Where a conflict in the evidence exists, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In certain instances, the opinions expressed by medical consultants may be more reflective of a claimant's actual abilities and limitations than the opinions expressed by his or her treating physicians. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The United States Court of Appeals for the Third Circuit has declared that "a longtime treating physician's opinion carries greater weight than that of a non-examining consultant." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). In this case, however, the

ALJ did not reject Dr. Davis' opinion solely on the basis of Dr. Wyszomierski's assessment. Instead, he also relied on the findings of Dr. Gennaula's consultative neurological examination. R. at 14-18. That examination essentially yielded normal results. R. at 374. "[N]o specific limitations" were found. R. at 374. The functional limitations described by Dr. Davis were clearly attributed to Toland's cerebrovascular accident rather than to his other impairments. R. at 35, 461. Since Dr. Gennaula's examination failed to uncover evidence of functional limitations resulting from the cerebrovascular accident, there was a clear conflict in the evidence. R. at 374. In light of this evidentiary conflict, it was the prerogative of the ALJ to "choose whom to credit." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). It is worth noting that the ALJ partially credited Dr. Davis' opinion by limiting Toland to jobs permitting him to sit or stand at his option. R. at 12, 41, 461. Because the ALJ properly weighed Dr. Davis' opinion and rejected it only to the extent that he deemed it to be inconsistent with the other evidence contained in the case record, the Plaintiff's first argument is without merit. [ECF No. 14 at 4-7].

The Plaintiff's second argument relates to the ALJ's hypothetical question to Edelmann.[13] [ECF No. 14 at 7-11]. At the fifth step of the sequential evaluation process, the Commissioner bears the burden of establishing the existence of jobs in the national economy falling within the claimant's residual functional capacity and vocational profile. *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with the claimant's residual functional capacity unless the question eliciting that testimony properly incorporates all of the claimant's

---

[13] The relevant portion of the Plaintiff's brief makes reference to medical sources and witnesses whose names do not appear in the case record. [ECF No. 14 at 7, 9]. For this reason, the specific argument advanced by the Plaintiff is difficult to follow. In any event, a careful review of the record reveals that the ALJ committed reversible errors in assessing Toland's residual functional capacity and formulating the hypothetical question to Edelmann.

13

functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

Challenges to the sufficiency of a vocational expert's testimony can take one of two forms. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). Where an administrative law judge properly assesses a claimant's residual functional capacity but fails to accurately convey all material aspects of that assessment to the vocational expert, the jobs identified by the vocational expert may not correspond with the claimant's abilities and limitations.[14] *Ramirez*, 372 F.3d at 552-555. In that scenario, the relevant defect occurs during the administrative law judge's formulation of the hypothetical question describing an individual with particular functional limitations. *Rutherford*, 399 F.3d at 554, n. 8. Where the hypothetical question directly corresponds with the residual functional capacity assessment but fails to incorporate a credibly established limitation, a challenge to the sufficiency of the vocational expert's testimony is "best understood" as a direct challenge to the underlying residual functional capacity finding. *Id.* In that event, the defect is attributable to the administrative law judge's factual findings rather than to the manner in which those findings are conveyed to the vocational expert. *Id.* A careful review of the record in this case reveals that the ALJ's hypothetical question and residual functional capacity assessment were both defective.

The ALJ determined that Toland's mental impairments had limited him to "simple tasks of unskilled work with no public contact." R. at 12. In so doing, the ALJ incorporated the

---

[14] The Plaintiff does not challenge the ALJ's evaluation of Toland's mental impairments. [ECF No. 14 at 4-11]. Therefore, those impairments will be addressed only to the extent that the limitations resulting therefrom were omitted from the ALJ's hypothetical question to Edelmann. R. at 12, 41.

14

definition of "unskilled work" contained in the Commissioner's regulations. R. at 11. At the hearing, however, the ALJ never told Edelmann that Toland could perform only "simple tasks," or that he was limited to "unskilled work." R. at 41. Instead, the ALJ described an individual who could not work with members of the general public or in "heavy maintenance" jobs. R. at 41. Although the preclusion of "public contact" was adequately conveyed to Edelmann, Toland's remaining mental limitations were never mentioned. Edelmann did not identify the skill levels associated with the jobs referenced in his testimony. R. at 41. In this respect, Edelmann's testimony was not sufficient to satisfy the Commissioner's evidentiary burden even if the correctness of the ALJ's residual functional capacity assessment is assumed. *Boone*, 353 F.3d at 205-209.

In the portion of his decision discussing Toland's residual functional capacity, the ALJ expressed agreement with Dr. Wyszomierski's view that Toland was "capable of a *limited* range of light exertion." R. at 15 (emphasis added). Nevertheless, the ALJ did not account for the postural and environmental limitations referenced in Dr. Wyszomierski's consultative report. Dr. Wyszomierski indicated that Toland could climb, balance, stoop, kneel, crouch or crawl only on an *occasional* basis. R. at 446. She further opined that he could not tolerate moderate exposure to vibration or concentrated exposure to wetness or workplace hazards. R. at 447. The ALJ neither adopted these limitations nor explained his reasons for declining to do so. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (recognizing that an administrative law judge "must give some indication of the evidence which he [or she] rejects and his [or her] reason(s) for discounting such evidence"). Instead, he simply observed that Toland's "complaints of pain and fatigue may be expected to limit his exertional capacity to the light level." R. at 17. Aside from the accommodation ensuring the presence of a sit/stand option,

15

which was apparently added in response to Dr. Davis' assessment, the ALJ found no physical limitations beyond those included within the definition of "light work." R. at 12. Despite the ALJ's purported acceptance of Dr. Wyszomierski's findings, he did not actually "limit" Toland's residual functional capacity in accordance with those findings. R. at 15.

The Commissioner correctly points out that the ALJ was not required to account for alleged functional limitations that were not established in the record. [ECF No. 16 at 14-15]; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008). In this case, however, the ALJ failed to account not only for limitations contained in the very consultative assessment that he purported to adopt, but also for limitations within the parameters of his own residual functional capacity finding. Consequently, his decision denying Toland's applications for DIB and SSI benefits is not supported by "substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

For the foregoing reasons, the ALJ's decision cannot stand. The remaining question is whether an immediate award of benefits is warranted, or whether the proper remedy is a remand for further consideration of the Plaintiff's claims.[15] A judicially-ordered award of benefits is proper only where "the evidentiary record has been fully developed," and where the evidence contained therein "clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case. Dr. Vujnovic's consultative evaluation revealed that Toland had only "slight" and "moderate" mental limitations. R. at 372. "[N]o specific limitations" were uncovered by Dr. Gennaula. R. at 374. Dr. Brentzel, Dr. Kar and Dr. Wyszomierski all opined that Toland's

---

[15] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

16

impairments were not disabling. R. at 375-378, 393-398, 444-450. Under these circumstances, it cannot be said that Toland's disability has been conclusively established.

Because the ALJ's hypothetical question to Edelmann was incomplete, it is not clear from the record whether an individual who is "limited to simple tasks of unskilled work" could maintain a full-time job as an assembler, a hand packer, or a sorter/grader. R. at 12, 41; *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (remarking that "a vocational expert's testimony was only as valid as the limitations that the ALJ had included in the hypothetical"). Furthermore, it is not clear whether one's ability to perform the tasks associated with those jobs would be compromised by the postural and environmental limitations found by Dr. Wyszomierski. R. at 446-447. The ALJ's reasons for rejecting or overlooking those limitations cannot be gleaned from the record. *Cotter*, 642 F.2d at 705 ("In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored"). The impact that such limitations may have on an individual in need of a sit/stand option cannot be ascertained by reference to the Dictionary of Occupational Titles ("DOT"). As the ALJ acknowledged in his decision, "the DOT does not include information about a sit/stand option." R. at 19. A functional limitation's impact on a claimant's ability to work can only be determined in relation to his or her other functional limitations. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). For these reasons, the ultimate question of Toland's disability during the relevant period of time cannot be determined in the absence of additional vocational evidence.[16] *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000).

---

[16] The Commissioner correctly points out that the period of time at issue is the period of time commencing on Toland's alleged onset date and ending on the date of the ALJ's decision. [ECF No. 16 at 10]. When the Appeals Council denied Toland's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Only the Commissioner's "final decision" may be reviewed in this context. *Califano v. Sanders*, 430 U.S. 99, 107-109 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). Consequently, the relevant period of time extends only from July 17, 2005, through July 20, 2010. R. at

## VI. Conclusion

It is respectfully recommended that the motion for summary judgment filed by the Commissioner [ECF No. 15] be denied, and that the motion for summary judgment filed by the Plaintiff [ECF No. 13] be denied to the extent that it requests an award of benefits, but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. It is further recommended that the decision of the Commissioner be vacated, and that the case be remanded to him for further consideration of Plaintiff's claims. In accordance with 28 U.S.C. §636(b)(1), the parties have fourteen days to file written objections to this Report and Recommendation. A party's failure to file written objections will seriously impair his ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman,* 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

/s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc/ecf: All counsel of record

---

19-20. The Court has no jurisdiction to consider whether Toland was entitled to benefits between July 21, 2010, and March 20, 2012. [ECF No. 14 at 3].